**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| **JAMES SCOFIELD, and all others similarly Situated.** | ) | |
| | ) | **Case No. 3:25-cv-603** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **NBKC BANK,** | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

NOW COMES the Plaintiff, JAMES SCOFIELD, by and through his attorneys, SMITHMARCO, P.C., and for his complaint on his behalf and all others similarly situated against the Defendant, NBKC BANK, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for all damages allowable under the Electronic Funds Transfer Act (hereinafter, "EFTA"), 15 U.S.C. §1693, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the EFTA, 15 U.S.C. §1693m.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. JAMES SCOFIELD, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Marshfield, County of Wood, State of Wisconsin.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1693a(6).

6. At all relevant times, Plaintiff had an asset account in his name with Defendant.

7. At all relevant times, Plaintiff's NBKC Account was established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

8. At all relevant times, Plaintiff's NBKC Account was an "account" as that term is defined by 15 U.S.C. §1693a(2).

9. NBKC BANK, (hereinafter, "Defendant") is a business entity that conducts business within the State of Wisconsin. Defendant is incorporated in the State of Kansas. Defendant's principal place of business is located in the State of Kansas.

10. At all relevant times, Defendant was a bank that held Plaintiff's NBKC Account.

11. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12. At all relevant times, Defendant was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

13. At all relevant times, TOPPER received funds from Plaintiff's NBKC Account, which were transferred to TOPPER via an electronic terminal, telephonic instruction or computer or magnetic tape after TOPPER instructed Defendant to transfer funds to TOPPER from Plaintiff's NBKC Account.

## IV. ALLEGATIONS

### COUNT I – SCOFIELD'S INDIVIDUAL CLAIMS

14. On July 21, 2024, upon logging into his on-line NBKC Account, Plaintiff noticed multiple transactions for $1,000 to a company identified on his bank statement as "Topper 6 W. 18th St., 3rd FlooINTERNET NY US."

15. The transaction entries on Plaintiff's bank statement further stated "ATM POS" in front of each entry, which indicated that this was a Point-of-Sale transaction with Plaintiff's ATM card.

16. Plaintiff at all times had his ATM card in his possession and was not anywhere near 18th St. in New York at any time.

17. Plaintiff was then and there able to discern multiple transactions to Topper that he did not authorize.

18. On or about July 17, 2024, $300.00 was debited from Plaintiff's NBKC Checking Account by Topper in New York.

19. On or about July 18, 2024, $300.00 was debited from Plaintiff's NBKC Account by Topper in New York.

20. On or about July 21, 2024, $1000.00 was debited from Plaintiff's NBKC Account by Topper in New York.

21. On or about July 21, 2024, $1,000.00 was debited from Plaintiff's NBKC Account three times by Topper in New York.

22. On or about July 21, 2024, $1,000.00 was debited from Plaintiff's NBKC Account three times by Topper in New York.

23. On or about July 21, 2024, $500.00 was debited from Plaintiff's NBKC Account three times by Topper in New York.

24. Prior to July 21, 2024, Plaintiff was not aware of the circumstances relating to the debit of funds from Plaintiff's NBKC Account on July 17, 2024, July 18, 2024, and July 21, 2024, by Topper.

25. Plaintiff has never heard of Topper, has no idea what this business is, and has never transacted with it.

26. Plaintiff did not provide Topper with consent to debit funds from Plaintiff's NBKC Account on July 17, 2024, July 18, 2024, and July 21, 2024.

27. Plaintiff did not provide Defendant with consent for Topper to debit funds from Plaintiff's NBKC Account on July 17, 2024, July 18, 2024, and July 21, 2024.

28. Prior to July 21, 2024, Plaintiff was not aware that $4,100.00 was to be debited from Plaintiff's NBKC by Topper, as delineated above.

29. On July 22, 2024, Plaintiff provided Defendant with notice that he disputed the debit of funds by Topper relative to Plaintiff's NBKC Account on July 17, 2024, July 18, 2024, and July 21, 2024.

30. On July 22, 2024, Plaintiff provided Defendant with information to allow Defendant to identity Plaintiff's NBKC Account, such as:

a. Plaintiff's NBKC Account number;

b. Plaintiff's personal identifying information;

c. The name under which Plaintiff's NBKC Account was registered;

d. The date of the transaction which Plaintiff disputed relative to Plaintiff's NBKC Account;

e. The amount of the transaction which Plaintiff disputed relative to Plaintiff's NBKC Account; and,

31. On July 22, 2024, Plaintiff provided Defendant with notice that the debit of funds by Topper relative to Plaintiff's NBKC Account on July 17, 2024, July 18, 2024, and July 21, 2024, were unauthorized electronic transfers of funds from Plaintiff's NBKC Account to Topper.

32. On July 22, 2024, Plaintiff informed Defendant that he did not provide Topper with consent to debit funds from Plaintiff's NBKC Account on July 17, 2024, July 18, 2024, and July 21, 2024.

33. On July 22, 2024, Plaintiff provided Defendant with oral and/or written notice of the circumstances as to why Plaintiff believed the debit of funds by Topper on July 17, 2024, July 18, 2024, and July 21, 2024, was carried out in error, such as:

a. Plaintiff never authorized the debit of funds from Plaintiff's NBKC Account;

b. Plaintiff never provided Topper with permission, consent or authority to debit funds from Plaintiff's NBKC Account;

c. Plaintiff never heard of Topper;

d. The transaction history is completely inconsistent with Plaintiff's previous account activity;

e. Plaintiff was not in New York, had never been to 18th St, in New York.

34. To date, Defendant failed to conduct any investigation relative to the error complained of by Plaintiff within ten (10) days of the receipt of Plaintiff's dispute in violation of 15 U.S.C. §1693f(a).

35. On or about August 2, 2024, after not hearing from Defendant regarding a response to Plaintiff's dispute, Plaintiff logged into his account and saw his dispute was denied and was closed.

36. Defendant never provided Plaintiff with a written response to his dispute in violation of 15 U.S.C. §1693f(a).

37. Defendant failed to advise Plaintiff that he may request reproduction of all of the documents which the Defendant utilized in coming to its conclusion that an error did not occur, leaving Plaintiff without the knowledge and information and the ability to get the information that

explained why the transactions Plaintiff claimed were not authorized, were ostensibly authorized, in violation of 15 U.S.C. §1693f(d).

38. Defendant's investigation was not made in good faith, and Defendant did not have a reasonable basis for denying the return of Plaintiff's funds in violation of 15 U.S.C. §1693f(e)(1).

39. Defendant knowingly and willfully concluded that Plaintiff's account was not in error when such a conclusion could not have been reasonably drawn from the evidence available to Defendant at the time of its investigation in violation of 15 U.S.C. §1693f(e)(2).

40. Defendant violated the Electronic Funds Transfers Act by holding Plaintiff liable for in excess of $50 on the aforementioned unauthorized transfers and has failed to refund the money into her account in violation of 15 U.S.C. §1693g(a).

41. Presently, Plaintiff remains without the $4,100.00 debited by Topper from Plaintiff's NBKC Account.

42. Plaintiff is neither legally responsible or obligated to pay the $4,100.00 debited by Topper from Plaintiff's NBKC Account.

43. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer mental anguish and emotional distress and out-of-pocket damages.

WHEREFORE, Plaintiff, JAMES SCOFIELD, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a. All actual compensatory damages suffered;

b. Statutory damages allowable under 15 U.S.C. §1693m(a)(2)(A);

c. Treble damages allowable under 15 U.S.C. §1693f(e);

d. Plaintiff's attorneys' fees and costs; and,

e. Any other relief deemed appropriate by the Arbitrator.

## COUNT II -CLASS ALLEGATIONS

44. Plaintiff re-alleges paragraphs 1 through 41 as though fully set forth herein.

45. Plaintiff brings this action individually and on behalf of the following class of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> *All natural persons residing within the United States and its Territories for whom, during the one (1) year period prior to the filing of this Complaint and continuing through the conclusion of this action, Defendant received a dispute from regarding an error on the persons' account and Defendant concluded that an error did not occur but failed to provide notice to the person that upon request of the person it would provide the person with reproductions of all documents that Defendant relied on to conclude that an error did not occur, in violation of 15 U.S.C. §1693f(d).*

46. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

47. Each class member that did not receive such notices and was, therefore, left without the knowledge, information and ability to get the information that explained why the transactions Plaintiff claimed were not authorized were ostensibly authorized. This left the person without the means to challenge Defendant's decision and obtain back the funds they lost.

48. The class is so numerous that joinder of all members is impractical. Upon information and belief, Defendant has performed a myriad of investigations into claims of authorized or erroneous electronic funds transfers. Defendant's correspondence in response to these disputes appears to be a matter of form, and said form fails to contain any notice of the right to request a reproduction of documents utilized in concluding no error occurred. Given the aforementioned conduct across the potential class, there exists a presumption of numerosity.

49. Questions of law and fact common to the Class predominate over any questions affecting only individual Class members. The principal question at issue is whether Defendant violated the EFTA by failing to provide the required notice to the consumer of their right to a reproduction of all documents utilized by Defendant after an investigation into unauthorized or erroneous transactions found no error.

50. Plaintiff's claim is typical of the claims for the Class, which arise from the same operative facts and are predicated on the same legal theories.

51. There are no individual questions of fact, other than whether Defendant has provided the requisite notice to a Class member, which can be determined by a ministerial inspection of Defendant's records.

52. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously prosecuting this matter and has retained counsel experience in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor counsel for Plaintiff have any interests that might cause them to not vigorously pursue this claim.

53. This action should be maintained as a class action as the prosecution of separate actions by individual members of the Class would create a substantial risk of inconsistent or varying adjudications with respect to individual Class members. Such a result would establish incompatible standards of conduct for the parties opposing the Class. Furthermore, the prosecution of separate actions could result in adjudications of individual members' claims that could be dispositive of the interests of other members not parties to the adjudications or could substantially impair and/or impede the ability of such individuals to protect their interests.

54. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate

claims against Defendant is small as the maximum statutory damages in an individual action under the EFTA are $1,000. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many class claims. The identities of individual Class members may be easily obtained from Defendant's records.

55. As a result of the above violations of the EFTA, Defendant is liable to Plaintiff and Class members for statutory damages, attorneys' fees and costs.

WHEREFORE, Plaintiff, JAMES SCOFIELD, on behalf of himself and all others similarly situated, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a. Certification of the proposed Class;

b. Appointment of Plaintiff as representative;

c. Appointment of the undersigned counsel as counsel for the Class;

d. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the EFTA;

e. An award to Plaintiff and the Class of damages, as allowed by law;

f. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

g. Any further relief as the Court deems necessary, just, and proper.

## V. JURY DEMAND

56. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
**JAMES SCOFIELD**

By: s/ David M. Marco
Attorney for Plaintiff

Dated: July 18, 2025

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Court
Sarasota, Florida 34240
**Telephone:** (312) 546-6539
**Facsimile**: (888) 418-1277
**E-Mail**: dmarco@smithmarco.com